The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff<br><br>     v.<br><br>HUMBERTO GARCIA,<br><br>          Defendant. | NO.  2:20-cr-00197-RAJ<br><br>FINAL ORDER ON DEFENDANT GARCIA'S MOTION TO SUPPRESS |

## I.   INTRODUCTION

THIS MATTER has come before the Court upon Defendant Humberto Garcia's Motion to Suppress Evidence. Dkt. 426. Having considered the motion, the government's response (Dkt. 433), the defendant's reply (Dkt. 438), and the files and pleadings herein, the Court issues this detailed ruling on the defendant's motion.

This Court previously issued an abbreviated order denying the defendant's motion to suppress. Dkt. 443. In that order, the Court indicated a more detailed order would be forthcoming. This order is the final order on the motion to suppress.

## II.   BACKGROUND

The defendant is charged with one count of Conspiracy to Distribute a Controlled Substance, methamphetamine, in violation of Title 21 U.S.C. § 841 (b)(1)(A). The defendant contends he was stopped on October 3, 2020 by task force officers who at the time of the stop asked for the defendant's consent to search his

vehicle. The defendant indicates he allegedly agreed to the search of his vehicle. Officers discovered 30.9 grams of methamphetamine and 213 grams of heroin. The defendant was released after the stop and search.

The defendant also contends that on December 2, 2020, law enforcement officers executed a search of his residence and located a weapon and drug paraphernalia. Dkt. 426, at 2.

The defendant filed a motion to suppress evidence seized during the vehicle stop and subsequent search of his residence. In his motion he asserts there was no basis for a traffic stop of his vehicle, thus invalidating any subsequent consent to search, and since the initial vehicle stop was a violation of the law, the subsequent search of the residence was illegal. His claim is that the search warrant affidavit used to support the search of his residence in part relied upon the October 3, 2020 vehicle stop.

The government filed a detailed statement of the facts they contend support denial of the defendant's motion, and assert because of these facts, no evidentiary hearing is necessary.

Specifically, the government contends a wiretap investigation beginning in early 2020 was conducted by a task force comprised of the DEA, FBI, and other law enforcement agencies. Using a confidential informant, the task force purchased approximately one pound of suspected methamphetamine from a drug supplier known as Jose Luis Ibarra-Valle, a codefendant in this prosecution. Multiple wiretap orders were secured during the investigation and these interceptions showed Ibarra-Valle and his coconspirators, including Garcia, worked together to distribute large quantities of methamphetamine. The periods for the three wiretaps were July 8, 2020, September 4, 2020, and October 16, 2020. Dkt. 433, at 3.

On October 25, 2020, Ibarra-Valle was stopped and officers searched his vehicle and found approximately 10.36 gross kilograms of methamphetamine, 1.64 gross kilograms of heroin, and 1.3 gross grams of pills suspected of containing fentanyl.

ORDER - 2

1    During one of the interception periods, the government has evidence of
2 communications where the defendant and Ibarra-Valle regularly discussed drug
3 trafficking.  The conversations included these two defendants speaking about their drug
4 dealings.  The government has tendered a wiretap communication on September 7, 2020,
5 where Garcia spoke about obtaining methamphetamine from Ibarra-Valle for a third
6 party.  Dkt. 433, Exhibit 1.  Government reports indicate that law enforcement observed
7 Ibarra-Valle and Garcia meet at a parking lot with Garcia arriving in a vehicle which, at a
8 later date, was the vehicle in which he was stopped, and the search which is the subject of
9 this motion ensued.
10   The following day, the task force intercepted a call wherein Ibarra-Valle and the
11 defendant discussed Garcia's sale of drugs received from Ibarra-Valle as well as the
12 acquisition of additional drugs, namely fentanyl.  Dkt. 433, Exhibit 10.
13   In addition to the intercepted calls about drugs, the government tendered
14 transcripts of communications about Ibarra-Valle's desire to secure a firearm from Garcia
15 to be used to dispose of another distributor who had failed to pay for drugs previously
16 advanced by Ibarra-Valle.  Dkt. 433, at 7-10.
17   Finally, the government detailed events occurring on October 3, 2020, the date of
18 Garcia's arrest.  On that date, investigators had established surveillance of both the
19 defendant and Ibarra Valle.  During an intercepted call, the two had agreed to meet at a
20 Chevron gas station nearby.  Garcia stated in the call that he was in front of a cigar store.
21 Officers observed Garcia leave the cigar store and observed Ibarra-Valle leave the
22 parking lot located in front of the store.  Ibarra-Valle was stopped, and a search of his
23 person and vehicle revealed no drugs.  A law enforcement officer thereafter stopped the
24 defendant's vehicle based upon a call that he would have drugs and/or a firearm.  The
25 detailed statement of events and communications between the officer and the defendant
26 are reflected in the government's response and will not be restated here.  Dkt. 433, at 11-
27 14.  This recitation of events is consistent with the dash and in-car camera with videos
28 that have an audio track.  Dkt. 433, Exhibits 12 and 13.  The culmination of this stop is

the search of the vehicle revealing the above-noted quantities of drugs following a consent to search by the defendant. After the seizure, officers left the defendant and his vehicle. No arrest was performed at this time.

On December 2, 2020, a search warrant was obtained to search the defendant's residence. The affidavit in support of the warrant detailed a description of the communications and surveillance relating to the September 11, 2020 delivery of multiple pounds of methamphetamine to another distributor (Gutierrez-Garcia), as well as the communications leading up to the October stop and search of the defendant's vehicle. Dkt. 433, Exhibit 14.

On that same day, Garcia's apartment was searched, and investigators found a 9mm pistol, registered to Garcia's girlfriend, along with drug paraphernalia with residue of suspected methamphetamine. During this search, law enforcement also seized from the defendant's pocket a telephone used by the defendant during intercepted calls with Ibarra-Valle.

### III.   DISCUSSION

The thrust of the defendant's motion to suppress is predicated upon a claim the stop of the defendant's vehicle without a warrant or probable cause was a violation of the Fourth Amendment's protections against unreasonable searches and seizures. The defendant concedes that an exception to the Fourth Amendment is consent. The government challenges the motion and rests its justification to stop and search upon probable cause and consent. The Court agrees with the government's analysis.

Law enforcement had been investigating the defendant and coconspirator Ibarra-Valle, among others, for days. The government has advanced portions of wiretap communications between the defendant and Ibarra-Valle. These interceptions included numerous calls where these two defendants generally discussed their drug dealing activities. As further noted, these discussions included Ibarra-Valle's desire to obtain from Garcia a firearm to resolve the issue of another drug distributor's failure to timely pay on a drug debt. Garcia is recorded admitting to securing and providing the firearm as

requested. These facts alone clearly support that the officers had probable cause to believe that evidence of these crimes would be found in either of these defendant's vehicles.

The Court agrees unequivocally that warrantless searches by law enforcement officers are per se unreasonable under the Fourth Amendment, subject to a few specifically established exceptions. Fifty-seven years ago, the Supreme Court in *Katz v. United States,* 389 U.S. 347, 357 (1967) determined that "[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is obtained." This exception is firmly rooted in the interpretation of lawful stops of automobiles. Equally vintage law is *Illinois v. Gates*, 462 U.S. 213, 238 (1983) where the Supreme Court held that probable cause exists to search if "there is a fair probability that contraband or evidence of a crime will be found in a particular place, based on the totality of circumstances.

This Court need only turn to *Katz* and *Gates* to analyze the outcome of this motion. The government cited five specific factual recitations of the connection between Ibarra-Valle and the defendant, and this Court incorporates by this reference the connecting evidence to support probable cause. Dkt. 433, at 16. Based upon the facts noted, the officers had more than ample probable cause to believe some evidence of a crime would be found in Garcia's car. For these reasons, this Court concludes the stop of Garcia's vehicle was proper.

Next, the defendant challenges the nature of the stop of the defendant's vehicle, suggesting the brief investigatory stop of the defendant's vehicle was unreasonable because of the absence of suspicion that a traffic violation had occurred.

Nothing in the record suggests that the stop of the defendant was premised upon a claimed traffic violation. Rather, as noted above, the stop was based upon the facts and circumstances of an investigation with wiretap confirmation of Ibarra-Valle and Garcia's multiple conversations about the acquisition and distribution of fentanyl and other drugs. Moreover, those same wiretaps included discussions about Ibarra-Valle's desire for

Garcia to obtain a firearm to use on Gutierrez-Garcia for non-payment of a drug debt. As the stop was based upon probable cause, the absence of reasonable suspicion that a traffic violation has occurred is not controlling. What was required was probable cause to believe that some evidence of a crime would be found in the car. This standard was clearly met, considering the specific facts of this case.

The defendant also contends the officers violated the defendant's consent to search by searching his computer bag in the trunk of his vehicle.

This contention is essentially moot considering the Court's ruling under the *Katz* and *Gates*, *Id..,* automobile exception analysis as previously noted in this Order. Moreover, the Court agrees with the government that the defendant misreads the application of *Florida v. Jimeno*, 500 U.S. 248, 251 (1991) and *United States v. McWeeney*, 454 F.3d 1030, 1034-35 (9th Cir. 2006). Those cases do stand for the proposition that a general consent to search a car includes consent to search containers within where drugs or weapons may be found. *See also United States v. Cannon,* 29 F.3d 472, 477 (9th Cir. 1994) and *United States v. Medina*, 2014 WL 5685235, at *7 (D. Mont. Nov. 4, 2014). Here, the dash-cam video clearly shows that Garcia gave unrestricted consent to search his vehicle after he had been *Mirandized* and being told he could refuse to consent. Although the dash-cam reflects that at some point Garcia withdrew his consent to search, it was untimely as by then the officers had already discovered the drugs. For these reasons, the defendant's challenge of the search is denied.

Garcia requests that if the Court determines the October 3, 2020 stop and search was in violation of the law, the seizure of evidence from the residence on December 2, 2020, should be suppressed. Since this Court has concluded that the search of the defendant's vehicle was lawful, this issue is moot.

The affidavit in support of the search warrant outlines in detail the task force investigation that began in early 2020. This investigation began with the use of a confidential informant to conduct a controlled purchase of approximately one pound of

methamphetamine. Dkt 433-14, at 14. The affidavit identified the acquisition of intercepted wire and electronic communications from July 8 to August 6, 2020, from September 4 to October 3, 2020, and October 16 to October 26, 2020, from two phones utilized by co-defendant Ibarra-Valle. Dkt. #433-14, at 14. This wiretap captured communications of several individuals, including the defendant. This warrant affidavit clearly demonstrates that the defendant and Ibarra-Valle had engaged in drug and firearm violations, all of which was supported by wiretap communications. Based upon the facts in that affidavit, it was equally clear that evidence of these offenses would be found at the residence searched. The Court agrees with the government that even if the limited references to the October 3, 2020 search of Garcia's car were deleted, probable cause for the search of the residence would still exist.

For these reasons, this aspect of the defendant's motion is also denied.

Last, the Court denies the defendant's request for an evidentiary hearing. Before this Court is a dash-cam and in-car-video that captures nearly the entirety of the contact and the circumstances surrounding the defendant's consent to search his vehicle. The defendant has failed to advance any justification for an evidentiary hearing or any basis for this Court to question the content of the recordings or what additional facts could be raised in such a hearing. For these reasons, the request for an evidentiary hearing is denied.

## IV. CONCLUSION

For the forgoing reasons, the defendant's Motion to Suppress is **DENIED**.

DATED this 28th day of March, 2024.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge

ORDER - 7